**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AUSTIN ELMER GLADHILL, #322-221          *

Petitioner          *

v          *          Civil Action No. CCB-07-3336

*

BOBBY SHEARIN, WARDEN, et al.          *

Respondents          *
***

**MEMORANDUM**

Before the court is Austin Gladhill's ("Gladhill") 28 U.S.C. § 2254 motion for writ of habeas corpus.  Gladhill, an inmate at the Eastern Correctional Institution, challenges his convictions for robbery in the Circuit Court for Washington County.  Respondents, [1]  through counsel, have filed a response to which Gladhill has replied.  Upon careful review of the pleadings, exhibits, transcripts, and applicable law, the court determines that an evidentiary hearing is unwarranted. The petition shall be denied by separate order.

**BACKGROUND**

(i)  Factual Background

On May 14, 2004, a jury sitting in the Circuit Court for Washington County convicted Gladhill of two counts of robbery and one count of theft.   On July 26, 2004, the court sentenced Gladhill to two concurrent fourteen-year terms of incarceration for robbery with the theft count merged.

---

[1]  The proper party respondent as required by Rule 2(a), Rules Governing Section §2254 Cases in the United States is Petitioner's custodian. *See* Rule 2(a), 28 U.S.C. fol. § 2254; Fed. R. Civ. P. 25(d)(1).  At the time Gladhill filed the petition, Bobby Shearin was warden of the Eastern Correctional Institution.  Kathleen Green is currently warden of the facility.  Substitution is permitted pursuant to Fed. R. Civ. P. 25(d)(1).

The facts as adduced at trial are summarized as follows.   On the evening of November 28, 2003, Telisa Nicholl ("Nicholl") and John Collins ("Collins") were robbed at the Sheetz convenience store in Hagerstown where they worked.  The robber took money from the store's cash register and fled.   They described the robber for the police.  Based on their description, the robber wore glasses.

On December 12, 2003, Anna Thomas ("Thomas") went to the Hagerstown police and told Officer Richard Johnson that her boyfriend, Gladhill, robbed the Sheetz store and that he intended to rob a bank in the Hagerstown area.  She agreed to telephone Gladhill and allowed police to record the conversation. Thomas signed a consent form for telephone monitoring. Exhibit 2, p. 7; Exhibit 3, pp. 69-71, 96.   Gladhill spoke very loudly during the phone conversation and police were able to also monitor the conversation as it occurred.  Exhibit 2, p. 9.   During the telephone conversation,  Gladhill implicated himself in the Sheetz robbery and threatened Thomas and her family. [2]

After the telephone call, police arrested Gladhill. Nicholl was shown a photo array that included Gladhill's photograph.  Nicholl told police that Gladhill's photograph looked familiar, but she was not certain that he was the robber; Gladhill did not wear eyeglasses in the photograph.

Jill Ritter, a victim's advocate in the Washington County State's Attorney's Office, sent Nicholl a letter informing her of Gladhill's preliminary hearing.  Nicholl and  Ritter attended the preliminary hearing at district court where Nicholl positively identified  Gladhill as the robber.

---

[2]  During the telephone conversation,  Thomas told Gladhill  that she had talked  with her friend Pam about the robbery.  Gladhill said: "If you mention my name to this fucking whore.  I don't know this fucking whore. I don't know her.  I'm going to kill you. I'm going to kill you.  I'm going to wipe out your family.  I'm going to kill her and her family.  I'm telling you right now I'm done."  Exhibit 2, p 53, Exhibit 14, p. 27.  Gladhill threatened to buy a gun and kill Thomas.  Exhibit 14, p. 29.

Exhibit 2, pp. 24-27, 33-37.

a.   Trial

Prior to trial, the defense moved to exclude the recorded telephone conversation and pretrial identification. The defense argued the recorded telephone conversation failed to meet the "one-party consent" criteria of the Maryland wiretapping statute, and that Thomas was in effect a state actor during the conversation, thereby requiring a *Miranda* [3] warning.  Exhibit 2, pp. 51-54. Defense counsel argued that Nicholl's photo identification of Gladhill was "not sufficient to be considered a positive identification," and the identification was tainted because Nicholl had observed Gladhill at the preliminary hearing.  Exhibit 2, pp. 42-46.   The court denied the motion to suppress.

At trial, Nicholl identified Gladhill as the robber.  The prosecutor did not mention the photo array or the preliminary hearing identifications during the state's opening statement or direct examination of Nicholl. Exhibit 3, pp. 30, 32-38.   On cross examination, defense counsel questioned Nicholl about her inability to identify Gladhill conclusively from the photo array.  *Id.* pp. 38-41.   On re-cross, defense counsel questioned Nicholl about seeing Gladhill at the preliminary hearing and whether it influenced her identification.  *Id.* pp.  44-46.

Collins, the store manager, testified that he identified Gladhill as the robber from a photo array.  *Id.* pp. 52-54.    Officer Kenny Barnhart testified that Nicholls and Collins selected Gladhill as the robber from the photo array, but their identifications were not "one hundred percent" certain.  *Id.*  pp. 63.

Two weeks before trial, Gladhill and Thomas married.  Thomas invoked her marital privilege; she did not testify against Gladhill.  In open court, but out of the presence of the jury,

---

[3] *Miranda v. United States*, 384 U.S. 436 (1966).

defense counsel argued the recorded telephone conversation was inadmissible because Thomas was unavailable for Gladhill to confront.   The trial court then ordered Thomas's statements redacted from the transcript.  *Id*. pp.  72-73 and 75-78.   After  defense counsel indicateded that Gladhill's statements were more prejudicial without the background provided by Thomas's conversation,  the court admitted Thomas's nonhearsay statements for context.  *Id*. pp. 84-88, 92-93.

(ii)  Procedural Background

a.   Direct Appeal

Gladhill appealed to the Court of Special Appeals of Maryland, raising claims of trial court error for: 1) admitting testimony that Gladhill refused to wear eyeglasses when photographed by the police; 2) admitting the transcript of his telephone conversation with Thomas; 3) denying the motion to suppress out-of-court and in-court identifications by Nicholl; and 4) failing to declare a mistrial following highly damaging testimony by a police officer. Exhibits, 5.   The Court of Special Appeals affirmed the judgment on November 28, 2005, ruling that the trial court did not abuse its discretion by admitting testimony that Gladhill refused to wear glasses when photographed by police, finding that the evidence was relevant to the "weight to be given to the identification testimony."   Exhibit 8, pp. 12-13.  Additionally, the court ruled Gladhill's transcript claim waived, Nicholl's identifications sufficiently reliable for admission, and no abuse of discretion in denying a mistrial.  *Id*. pp. 19-23.

Gladhill sought review before the Court of Appeals of Maryland, presenting claims of trial court error for: 1) admitting testimony that he refused to wear eyeglasses when photographed by the police; 2) admitting the transcript of his telephone conversation with

Thomas; and 3) denying the motion to suppress Nicholl's out-of-court and in-court identifications. Exhibit 9. On March 10, 2006, the Court of Appeals of Maryland summarily denied certiorari. Exhibit 10.

b. Petition for Post-Conviction Relief

On June 20, 2006, Gladhill petitioned for post-conviction relief in the Circuit Court for Washington County. Gladhill's petition, as supplemented, claimed: A) ineffective assistance of trial counsel for: 1) failing to object to highly prejudicial portions of the transcript of the recorded telephone conversation; 2) failing to object to admission of the recorded telephone conversation on confrontation grounds; 3) failing to request a mistrial or limiting instruction after the jury was presented with inadmissible evidence; 4) failing to present evidence of coercive tactics used to establish probable cause and obtain key evidence; 5) failing to request a rule on witnesses prior to presentation of witness testimony at trial; 6) failing to challenge or move to suppress photo array evidence; 7) failing to take exception to the court's instruction on photo array evidence; 8) failing to object to the court amending his sentence to include a concurrent fourteen-year term; and 9) by the cumulative  effect of these errors. Gladhill also claimed violations of his:  B) right to confrontation by admission of a pre-trial identification evidence; C)  right to due process when the court amended his sentence to include a fourteen-year sentence not previously imposed; and D) right to due process by admission of the redacted transcript of the telephone conversation. Exhibits 11-16. After conducting a hearing on November 13, 2006 and December 13, 2006, the Circuit Court of Washington County denied post-conviction relief.

Gladhill filed an application for leave to appeal the post-conviction court's denial of post-conviction relief.  As supplemented, the application claimed:  A) ineffective assistance of trial

5

counsel for failing to: 1) object to highly prejudicial portions of the transcript of the recorded telephone conversation; 2) object to admitting the recorded telephone conversation on confrontation grounds; 3) request a mistrial or limiting instruction after the jury was presented with inadmissible evidence;  4) present evidence of coercive tactics used to establish probable cause and obtain key evidence; 5) request a rule on witnesses prior to presentation of witness testimony at trial; 6) challenge or move to suppress photo array evidence; 7) take exception to the victim's in-court identification; 9) object to the court amending his sentence; 10) object to the sentencing court's failure to make a determination on his subsequent offender status; and 11)  the cumulative effect of the errors.  In addition,  Gladwell claimed:  B) his right to confrontation was violated by admission of pre-trial identification evidence; C) his right to due process was violated by admission of evidence of pretrial identification; and D) his right to due process was violated by admission of a redacted version of the transcript of the recorded telephone conversation.  Exhibits 17  and 18.    On September 24, 2007, the Court of Special Appeals of Maryland summarily denied leave to appeal.

## PETITIONER'S CLAIMS

In his petition for federal habeas corpus relief, Gladhill claims trial court error for: 1) admitting testimony that he refused to wear eyeglasses when photographed by police; 2) admitting the transcript of his phone conversation with Thomas; 3) denying the motion to suppress out-of –court and in-court identifications by Telisa Nicholl; and 4) failing to declare a mistrial following highly damaging testimony by a police officer.  Gladhill also asserts: 5) his right to confrontation was violated by Nicholl's pre-trial identification;  6) his right to due process was violated by admission of the redacted transcript of the recorded telephone

conversation; and 7) ineffective assistance of trial counsel.  Specifically, he faults trial counsel

for failing to: A) object to highly prejudicial portions of the transcript of the recorded

conversation; B) object to admission of the recorded telephone conversation on confrontation

grounds; C) request a mistrial or limiting instruction after the jury was presented with

inadmissible evidence; D) challenge or move to suppress photo array evidence; E) take exception

to the court's instruction on photo array evidence; and F) take exception to the victim's in-court

identification on confrontation grounds.  Petition and Supplemental Memorandum.

### PROCEDURAL DEFAULT

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim

presented to the federal court by pursuing remedies available in state court.  *See Rose v. Lundy*,

455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the

claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b) and

(c); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Maryland, this may be

accomplished by raising certain claims on direct appeal and with other claims by way of post-

conviction proceedings.  Exhaustion is not required if at the time a federal habeas corpus petition

is filed the petitioner has no available state remedy.  *See Teague v. Lane*, 489 U.S. 288, 297-98

(1989).

When a petitioner fails to present a claim to the highest state court with jurisdiction,

whether it be by failing to raise the claim in post-conviction proceedings, direct appeal, or by

failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v.*

*Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477

U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46

(1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

## STANDARD OF REVIEW

The petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (stating habeas court's standard for evaluating state-court ruling is highly deferential); *Jones v. Sussex I State Prison*, 591 F.3d 707, 709-10 (4th Cir. 2010). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits

 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or

2)  "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Gray v.*

*Branker*, 529 F.3d 220, 228 (4th Cir.  2008).

    A state court decision is "contrary to" clearly established federal law when "the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court decision

is based on an "unreasonable application" of clearly established federal law when "the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal

habeas court making the 'unreasonable application' inquiry should ask whether the state court's

application of clearly established federal law was objectively unreasonable." *Id*. at 409.

Furthermore, when a state court has made a finding of fact, it is presumed to be correct and "[t]he

applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

    Ineffective assistance claims are reviewed under a two-part test established in *Strickland*

*v Washington,* 466 U.S. 668 (1984); *see also Bell v. Cone*, 535 U.S. 685, 698-99 (2002)

(explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)).  In order to establish

infringement of a criminal defendant's  Sixth Amendment right to effective assistance of counsel,

it must be shown that counsel's performance was deficient, and the deficient performance

prejudiced the defense. *See Strickland,* 466 U.S. at  687.

Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at  688.  It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases."  *Id.* at 687.  The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689.  To prevail, a petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy." *Id.*

A showing of prejudice requires that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result, and there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.   A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

In the context of § 2254, it is not sufficient for a petitioner to convince the federal habeas court that the state court merely applied *Strickland* incorrectly.  Rather, a petitioner must show that the  state court applied  *Strickland* to the facts of the case in an objectively unreasonable matter.  *See  Bell*, 535 U.S. at 698-99; *William*s, 529 U.S. at 409-10.

## DISCUSSION

### A.   Claims of Trial Court Error

1.  Admission of Testimony that Gladhill Refused to Wear Glasses for Photograph

Gladhill fails to identify a constitutional right or federal law violated by the admission of this testimony.  Instead, he premises the claim entirely on a violation of state evidentiary rules as he did on direct appeal, where he argued before the Court of Special Appeals that the testimony was inadmissible on the basis of Maryland Rule 5-401 and 403. Exhibit 5, p. 8.  The Court of Special Appeals of Maryland rejected the claim, stating:

> The robber was described by the victims as wearing glasses, and the composite sketch of the robber shows a man wearing glasses, but the photographs in the array show men without glasses.  Both witnesses testified, in effect, that their identification of appellant's photograph was equivocal because he was not wearing glasses.  The testimony that appellant refused to wear glasses for the photograph explained why the men in the array were not wearing glasses and thus was relevant to the weight to be given to the identification testimony.

Exhibit 8, p. 13.

In order to be entitled to federal habeas corpus relief, a petitioner must demonstrate that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also, Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983). Violations of state law which do not infringe on specific federal constitutional protections are not cognizable under § 2254.  *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Weeks v. Angelone,* 176 F.3d 249, 262 (4th Cir. 1999) ("when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review").  Evidentiary rulings are generally considered state law matters.  *See Estelle*, 502 U.S. at 72; *Spencer v. Murray*, 5  F.3d 758, 763 (4th Cir.1993).  Gladhill does not allege, nor does the record suggest, that the error alleged "by itself so infected the entire trial that the resulting conviction violates due process" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S.

141, 147(1973)).  Petitioner's claim of trial court error on the grounds of state evidentiary rules is

not cognizable on federal habeas review.

    2.   Admission of Telephone Conversation Transcript

       Gladhill claims his right to confront witnesses was abridged by admission of the

redacted transcript.  The Court of Special Appeals rejected this claim as waived and without

merit.  Exhibit 8, pp. 19-20.   The state post-conviction court also rejected the claim, ruling:

> Petitioner contends his due process rights were violated when the transcript of the recorded telephone conversation containing some of Anna Thomas-Gladhill's statements was admitted into evidence. Petitioner argues the trial court erred in admitting the redacted transcript, trial counsel should have re-raised the due process issue once the transcript had been redacted, and on appeal, appellate counsel failed to specify violative portions of the transcript.

> Initially, the trial court decided to exclude all of Ann Thomas-Gladhill's statements from the transcript of the telephone conversation as hearsay that did not qualify for an exception. T. at I-77-78.  However, after further consideration, the trial court revised its earlier decision so only Anna Thomas-Gladhill's comments considered "statements" under the hearsay rule, were redacted and the remainder of the transcript was permitted to go to the jury. T. at I-87. On appeal to the Court of Special Appeals, Petitioner raised the issue that the trial court erred in admitting the transcript in its redacted version where the higher Court found Petitioner failed to point out specific portions of the transcript or explain why said portions violated due process and ruled the argument was waived.

> Since the appellate court ruled Petitioner's argument as to the due process violation waived on appeal, it is unnecessary for this court to revisit the issue.

Exhibit 16, pp. 32-33.

       In this proceeding, as in the state courts, Gladhill fails to specify what statements in the

admitted transcript were hearsay or violated his right to confrontation.  Petition, Ground  B

(Memorandum, pp. 6-8) & L (Memorandum p. 16).   Further, to the extent Gladhill might rely on

*Crawford v. Washington*, 541 U.S. 36 (2004),[4] the facts here do not run afoul of that ruling.

Here, the relevance of the transcript was based on Gladhill's statements.  Thomas's statements

were not offered for their truth, but at the request of defense counsel, to provide a context to

diminish Gladhill's inflammatory remarks.  *See  id.* at 59 n.9 (noting that the Confrontation

Clause does not bar use of testimonial statements when not offered for truth of the matter

asserted).   As used here, Thomas's statements did not offend the Confrontation Clause,  *Id.*; *see*

*also Tennessee v. Street*, 471 U.S. 409, 414 (1985), and there is no basis for habeas relief.

> 3.   Motion to Suppress Identifications

Gladhill claims that Nicholl's in-court identification was tainted by her impermissively

suggestive observation of him at the preliminary hearing and violated his right to confrontation.

Petition, Ground C (Memorandum pp. 8-9).  In fact, defense counsel challenged the

identification at the preliminary hearing and defense counsel had the opportunity to cross-

examine Nicholl at trial. Exhibit 2, pp. 35-38, Exhibit 3, pp. 38-42, 44-46.

The Court of Special Appeals affirmed the trial court after thorough review of the

transcripts.  Exhibit 8, pp. 3-11.  On the basis of this record, the Court of Special Appeals

affirmed the trial court's admission of Nicholl's out-of-court and in-court identifications.  *Id.*, pp.

20 and 22.

Review of the record here supports the state court's findings.  There is no suggestion that

the identification was "so impermissibly suggestive as to give rise to a very substantial likelihood

of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also*

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (reliability is "linchpin" in determining

---

4 In *Crawford*, the Supreme Court held that the testimonial statement of a person who is not called as a witness may
not be admitted against the accused for its truth unless the declarant is unavailable, and the defendant had a prior
opportunity to examine the witness. 541 U.S. at 53-54.

admissibility of identification testimony where suggestiveness may be present); *Neil v. Biggers,* 409 U.S. 188, 198 (1972) (holding pre-trial identification is excludable if the court finds misidentification and a subsequent in-court identification is forbidden if the prior misidentification was "irreparable.").

The state court's decision was neither "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1), nor "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Consequently, the claim will be denied.

4.  Failure to Declare a Mistrial

Gladhill next claims that he was denied due process when the trial court failed to declare a mistrial following highly damaging testimony by a police officer. Petition, Ground D, Memorandum at 9.   The claim concerns the following testimony by state's witness, police investigator Greg Alton:

> Q.  And what were the statements in this phone conversation that alarmed you enough to go out or to send these people, the Special Response Team, to the defendant's home?
>
> A.  That he [Gladhill] was going to go out and get a rifle and kill Ms. Thomas, kill her family…
>
> [DEFENSE COUNSEL]:  Objection, Your Honor.
>
> THE COURT:   Sustained.
>
> [DEFENSE COUNSEL]:  Move to strike that…, that part of the response before I got my objections out as well.
>
> THE COURT: It will be stricken.

14

Exhibit 3, p. 106.

The instant claim was not raised in Gladhill's petition for writ of certiorari to the Court of Appeals of Maryland.  Where, as here, there is no claim of cause and prejudice or miscarriage of justice, the issue is procedurally defaulted.  *See supra*, pp. 7-8.   Further, even were this claim not procedurally defaulted, the claim lacks merit.  The defense did not request a mistrial and the trial court was not obligated to spontaneously declare a mistrial.  A less drastic remedy to cure any impropriety was requested and granted. There is no cause to award habeas corpus relief.

B. Ineffective Assistance of Counsel Claims

1.   Failure to Object to Prejudicial Portions of Phone Transcript

Gladhill posits that trial counsel was ineffective for failing to object to admission of highly prejudicial portions of the phone call.  This claim was rejected by the post-conviction court, which stated:

> Petitioner contends portions of the transcript of the recorded telephone conversation were prejudicial and trial counsel should have objected to these being presented to the jury. At trial, the State introduced the transcript of the recorded telephone conversation between Petitioner and Anna Thomas-Gladhill where trial counsel objected to the admission of the transcript with all of Anna Thomas-Gladhill's statements included with the trial court hearing argument on whether said sections of the transcript were admissible. T.at I-68-79. The trial court eventually admitted a redacted version of the transcript containing all of Petitioner's statements excluding Anna Thomas-Gladhill's statements deemed hearsay. Petitioner claims the admission of the transcript containing his incriminatory statements was highly prejudicial and outweighed any probative value it may have had in evidence, and trial counsel should have objected to said statements.
>
> From the record, it is clear trial counsel was intent on excluding Anna Thomas-Gladhill's statements and did raise an objection to Petitioner's statements based on the coercive nature of the conversation. T. at I-74. The trial court found due to Anna Thomas-Gladhill's consent and Petitioner's non-custodial status at the time of the conversation, the

15

incriminatory statements were admissible. T. at I-76. After hearing argument from both parties and conducting an *in camera* review, the trial court redacted the transcript to exclude any of Anna Thomas-Gladhill's statements which were hearsay. Trial counsel could have advanced the "prejudicial effect argument" as Petitioner suggests, but trial counsel argued that statements were inadmissible based on the coercive nature of the conversation. As the appellate courts have stated, counsel is not required to pursue all possible defense strategies where there is a sound reason to direct his or her attention only to a particular strategy. *Love v.State*, 95 Md. App. 420, 436 (1993). Trial counsel was placed in a difficult situation where portions of the transcript were highly probative and would have remained even if the prejudicial portions were excluded. Trial counsel attempted to exclude the whole transcript arguing the nature of the conversation was so coercive, that the statements were inadmissible. It is clear from the record this was a strategic decision to attempt to eliminate the entire transcript, and not just the portions containing prejudicial statements made by Petitioner.

Exhibit 16 at 18-19.

The record supports the conclusions of the state post-conviction court.  Trial counsel's decisions were strategic.  Counsel's performance is evaluated under a "highly deferential" standard and not second-guessed. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted) ; *see also, Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").  Gladhill fails to sustain his burden to establish deficient legal representation or rebut the presumption that trial counsel's decisions constituted sound trial strategy.  In addition, Gladhill fails to show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   Gladhill cites no authority that his statements were per se inadmissible or per se prejudicial under the circumstances of this case. The state court's decision was a reasonable application of law and survives scrutiny under 28 U.S.C. § 2254.

     2.   Failure to Object to Recorded Telephone Conversation on Confrontation Grounds

This claim was rejected by the state post-conviction court, which stated:

> Petitioner contends the admission into evidence of the telephone transcript violated his right to confrontation and trial counsel should have objected to exclude the transcript from consideration by the jury. Petitioner contends trial counsel should have cited recent case law to support argument challenging the evidence. When the State introduced the transcript at trial, trial counsel objected partly on the grounds that Petitioner could not confront or cross-examine the other participant in the telephone conversation since Anna Thomas-Gladhill invoked her privilege not to testify. T. at I-73. While trial counsel acknowledged the difficult evidentiary position Petitioner was in, she argued there was a confrontation issue regarding the admissibility of the transcript. I-73.

> The fact that trial counsel did not cite case law is irrelevant considering that the trial court ultimately redacted the bulk of Anna Thomas-Gladhill's statements from the transcript. It is safe to assume the trial court was aware of the recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and the record is void of any request for trial counsel to submit case law in support of the confrontation argument. In effect, Petitioner's contention is merely an attempt at splitting hairs where trial counsel clearly raised the issue of Petitioner's right to confrontation regarding the transcript, and the trial court properly limited the transcript for the jury. Trial counsel obtained all the relief that was realistically possible from the trial court, given that some of the statements were not hearsay assertions. Petitioner provides no explanation for how failing to cite case law was an error on trial counsel's part.

Exhibit 16 at 19-20.

The record shows that trial counsel objected to admission of the transcript on confrontation grounds and persuaded the court to redact all of Thomas's statements.  Exhibit 3, pp. 72-79.  The trial court ultimately admitted non-testimonial statements to provide context for Gladhill's statements while protecting his confrontation rights.   The post-conviction court's determination was not an unreasonable application of law.  Gladhill fails to show that the state court applied *Strickland* to the facts in an objectively unreasonable matter, *see  Bell,* 535 U.S. at 698-99; *William*s, 529 U.S. at 405, and there is no cause to disturb the state court decision.

3.   Failure to Request a Mistrial or Limiting Instruction After
Inadmissible Evidence Presented

The state post-conviction court rejected the claim that trial counsel was deficient for failing to request a mistrial or limiting instruction after Investigator Greg Alton presented inadmissible evidence before the jury.  *See supra*, p. 15.   The state court noted that trial counsel timely objected and successfully moved to strike the testimony, concluding:

> Trial counsel testified at the post conviction hearing that she chose not to belabor the testimony further, for fear of unnecessarily emphasizing it for the jury. This was a reasonable choice given the prejudicial nature of Alton's statements and was ultimately in Petitioner's best interest not to emphasize the evidence for the jury. Again, trial counsel is not required to pursue all possible defenses and here, trial counsel had a legitimate reason for her course of action.

Exhibit 16, p. 22.

Upon presentation of the testimony, trial counsel moved immediately to strike the motion; she chose not to unnecessarily emphasize the damaging testimony by requesting further instruction or mistrial.   Gladhill cites no case law holding that a mistrial was required.  Under the deferential standard of review applicable to § 2254 proceedings, the state court decision is a reasonable application of *Strickland*.   Gladhill fails to sustain his burden to establish deficient

18

legal representation or rebut the presumption that trial counsel's decisions constituted sound trial strategy.  This claim does not provide grounds for federal habeas relief.

### 4.   Failure to Challenge or Move to Suppress Photo Array Evidence

Gladhill faults trial counsel for failing to challenge or move to suppress photo array evidence.  Petition, Ground H.  This claim was denied by the post-conviction court which stated:

> Petitioner contends that the pre-trial identification stemming from a police photo array was unreliable and trial counsel should have challenged said evidence in her Motion to Suppress. During the investigation into the robbery, victims Telisa Nicholl and John Collins were shown a photo array from which they chose Petitioner's photo, although neither was completely certain about the identification. This evidence was later used at trial to establish Petitioner as the person who committed the robbery.
>
> It is difficult to find any reasonable strategy for not including the photo array identification evidence in the Motion to Suppress. There was no harm in presenting the issue and at minimum, it would have provided an opportunity to preview witnesses' testimony regarding the photo array for cross-examination at trial. It was clearly an error for trial counsel not to include the photo array evidence in the suppression motion yet it had little impact on the final outcome, since the victims both provided in-court identifications at trial.

Exhibit 16 at 25-26.

Notwithstanding the post-conviction court's determination,  the transcript  shows that defense counsel challenged the photo array identification,  as "not sufficient to be considered a positive identification" and impermissively suggestive.  Exhibit 2, pp. 42-46.  In any case, the post-conviction court determined that even if trial counsel was deficient, there was no prejudice given the other evidence against Gladhill.  Exhibit 16, p. 34.   The post-conviction court characterized the evidence against Gladhill as "strong," noting the "victims were able to identify Petitioner at trial, there was an identification of the vehicle he was driving and the transcript of

the recorded telephone conversation contained statements implicating Petitioner in the robbery."

*Id*.

Gladhill provides no authority that but for trial counsel's alleged deficiency, the photo array would have been suppressed.  The evidence against Gladhill was substantial; the post-conviction court's determination that there was no prejudice and representation did not amount to constitutionally ineffective assistance was not an unreasonable application of *Strickland*.  The claim fails to provide a basis to award habeas relief.

5.  Failure to Take Exception to Court Instruction on Photo Array

In rejecting this claim, the post-conviction court wrote:

> Petitioner next contends the court's jury instruction on the photo array evidence permitted the jury to assume facts not in evidence and trial counsel should have taken exception to the instruction. During the court's instructions to the jury on the evidence, the following instruction was given:
>
> > You have also heard evidence that prior to this trial, a witness identified the defendant, I believe by photographic array and perhaps also during another proceeding. The identification of the defendant by a single eyewitness as a person who committed the crime, if believed beyond a reasonable doubt, can be enough to convict the defendant. However, you should examine the identification of the defendant with great care. It is for you to determine the reliability of any identification and give it the weight you believe it deserves.
>
> T. at I-120. Petitioner claims that at this point, trial counsel should have taken exception to the instruction because it asserted as fact, identifications that were not completely certain according to the evidence. Trial counsel testified that taking exception to this jury instruction could have drawn more attention to the evidence, thus, the likely harm to Petitioner outweighed the curative function of an exception. Trial counsel's choice not to object to the jury instruction was a strategic decision based on reasoned judgment that she believed should not belabor evidence, which was harmful to Petitioner.

Exhibit 16 at 26-27.

The state court's findings of fact are presumed correct and supported by the record. Exhibit 14, pp. 48-50.  The jury was instructed that reliable testimony of a single witness is sufficient to sustain conviction.  The post-conviction court credited trial counsel testimony that she wanted to avoid drawing attention to the instruction. The post-conviction court's determination was not an unreasonable application of law; Gladhill fails to show that the state court applied *Strickland* to the facts in an objectively unreasonable matter, *see  Bell*, 535 U.S. at 698-99; *William*s, 529 U.S. at 405.  The claim survives scrutiny under federal habeas review.

6.   Failure to Take Exception to In-Court Identification

Lastly, Gladhill complains that trial counsel failed to take exception to Nicholl's in-court identification.  Petition, Ground I.  The post-conviction court denied this claim as follows:

> Petitioner contends the pre-trial, in-person identification at the preliminary hearing violated his right to confrontation and trial counsel should have fully challenged the identification at the suppression hearing. Specifically, Petitioner argues trial counsel should have challenged the identification evidence on the basis that he was denied his right to confrontation.

> It should be noted that Nicholl, as every victim of a crime in Maryland, had the right to attend Petitioner's preliminary hearing. Md. Code Ann., Crim. Proc. § 11-101 (2001). The Washington County State's Attorney's Office notified her of Petitioner's preliminary hearing in District Court pursuant to Md. Code Ann., Crim. Proc. § 11-104 (2001). Nicholl attended the hearing, accompanied by Jill Ritter, Victim Advocate for the State's Attorney's Office, and identified Petitioner as the man who robbed her. In her Motion to Suppress, trial counsel challenged Nicholl's pretrial identification as being unduly suggestive and the court denied the motion. The issue arose again at trial during cross-examination of Nicholl where trial counsel attempted to elicit testimony demonstrating the suggestive nature of the identification.

> The record of the suppression hearing and the trial are void of any argument advanced by trial counsel that Nicholl's pretrial in-person identification violation Petitioner's right to confrontation. However, Petitioner challenged the pretrial identification through the motion to suppress, and had ample opportunity to cross-examine Ms. Nicholl at trial regarding the identification. Petitioner fails to demonstrate how moving to suppress the identification evidence and cross-examining the witness, denied him the right to confrontation. At both stages of the case, trial counsel attempted to exclude or at least mitigate the pre-trial identification.

Exhibit 16 at 27-29.

As earlier noted, Gladhill fails to identify any statements at trial that support his confrontation claim. *See supra*, p. 12-13. Gladhill was afforded the opportunity to confront and question Nicholl both at the motions hearing and at trial. Counsel's representation was neither deficient nor prejudicial to the outcome of trial under the standard set forth in *Strickland*. There are no grounds for federal habeas relief.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability (COA) must issue before a petitioner can appeal the court's decision. *See* 28 U.S.C. § 2253(c) (1) and Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). In cases where the district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless a petitioner can demonstrate both "(1) 'that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484).

Petitioner has not made the requisite showing. There is no basis to grant a certificate of appealability.   Denial of a certificate of appealability by this court does not prevent Petitioner from seeking a certificate of appealability from a judge of the Fourth Circuit.

### CONCLUSION

For the reasons stated above, the court finds no grounds to award relief under 28 U.S.C. § 2254 or to issue a certificate of appealability.  A separate order follows.


  March 25, 2010                                    /s/

Date                                                 Catherine C. Blake
                                                     United States District Judge